IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

MICHAEL STEVEN WRIGHT,

Petitioner,

vs.

UNITED STATES OF AMERICA,

Respondent.

CR. NO. 15-00171 DKW
CV. NO. 18-00377 DKW-KJM

**ORDER (1) DENYING MOTION
UNDER 28 U.S.C. § 2255 TO
VACATE, SET ASIDE, OR
CORRECT SENTENCE; AND
(2) DENYING CERTIFICATE OF
APPEALABILITY**

On March 12, 2015, Petitioner Michael Steven Wright pled guilty, without a

plea agreement, to possession with intent to distribute a mixture or substance

containing a detectable amount of methamphetamine, in violation of Title 21 of the

United States Code Sections 841(a)(1) and (b)(1)(C).  Thereafter, Wright was

sentenced to 24 months imprisonment for that offense with the Court finding,

among other things, that Wright was responsible for 1333 grams of

methamphetamine.  On appeal, Wright challenged his sentence, and the Ninth

Circuit Court of Appeals affirmed, finding that Wright was merely held

responsible for his own conduct.  Relying on Section 2255 of Title 28 of the

United States Code ("Section 2255"), Wright again challenges his sentence, this

time alleging ineffective assistance of counsel.  To the extent the sentencing

argument Wright raises in this proceeding was not raised and decided during his direct appeal, the Court rejects Wright's request for collateral relief because his sentencing counsel was not ineffective.

## BACKGROUND

## I.    Arrest, Information, And Guilty Plea

The uncontroverted Presentence Investigation Report provided the following explanation of Wright's offense conduct and arrest:

6.      The investigation in this case was conducted by the Drug Enforcement Administration (DEA), with assistance from the Honolulu Police Department (HPD). The investigation was initiated on 11/05/2014, after U.S. Postal Inspectors contacted investigators regarding a suspicious parcel. The parcel weighed approximately 5 pounds, 7 ounces, and was addressed to "Mike Knight, 1301 Liliha Street, Apartment 210, Honolulu, Hawaii;" with a return address of "Airborne Models Hobby, 4749 Bennett Drive #K, Livermore, California."

7.      A narcotic detecting canine alerted to the odor of narcotics on the parcel and investigators obtained a search warrant. Pursuant to the search warrant, investigators opened the parcel and recovered methamphetamine. Subsequent laboratory analysis established that the parcel contained a total of 1,333.84 net grams of d-Methamphetamine Hydrochloride, with purity levels ranging from 98.8% to 100%.

8.      Investigators repackaged the parcel with pseudo-methamphetamine and 0.84 gram of the recovered methamphetamine, along with an electronic monitoring device. On 11/06/2014, investigators initiated a controlled delivery of the parcel utilizing an undercover investigator (UC) to the Liliha Street address. The UC placed the parcel in a mailbox designated for apartment 210. Shortly thereafter, investigators observed the defendant, Michael Steven Wright, remove the

parcel from the mailbox, place it on the footboard of his moped, and proceed to the apartment building. Investigators also observed Wright speak to another male, later identified by Wright as his brother, Glen Patterson. Investigators followed Wright as he left the apartment building, traveled through various city streets, frequently looked around, and used his cellular telephone. Investigators eventually stopped Wright and placed him under arrest. From Wright's person, investigators recovered the parcel and a digital scale.

9. Immediately after his arrest, Wright waived his constitutional rights and agreed to speak with investigators. When asked what was in the parcel, Wright advised investigators that he was "under the impression it was marijuana." When asked how many parcels he previously received, Wright stated, "I have only received a handful of parcels, about 4 or 5 over the past 2 months, and I do it for rent." When asked if the parcels were sent to his residence, and if he knew what was inside of each parcel, Wright stated that the parcels were sent to his residence, and that he believed the parcels contained marijuana. Wright added, "I smoke marijuana, but do not smoke meth or crack." When asked if the prior parcels were sent to him from the same person, Wright replied that the last 2 were sent from the same person, known to him as "Dave Bay," who was later identified as David Toma. Wright indicated that he and Toma had conversations which led to Wright's receipt and payment for parcels. Wright stated that one parcel arrived on 11/01/2014 and another on 11/06/2014. Wright gave consent to search his iPhone and provided the telephone number listed for Toma.

10. Wright admitted that he received a telephone call from Toma, who told him that he would receive a box containing marijuana through the mail on 11/01/2014, and that Wright should call Toma when it arrived. Wright said that he specifically told Toma not to send any "crazy shit." Wright stated that when the parcel arrived, he drove to the Hilton Hawaiian Village Hotel in Waikiki with the parcel on his moped, as instructed by Toma. Wright said that he did not know what type of drugs were inside of [the] parcel, but assumed that it was marijuana, and delivered it to Toma at an unknown hotel room. Toma took the

parcel into the bedroom, and returned to give Wright some marijuana in exchange for receiving and delivering the parcel. Wright stated that he was not paid any cash for the delivery.

11.    Wright further stated that Toma told him that another shipment of marijuana would arrive to his residence on 11/05/2014, and that he would be paid $1,000.00 in cash for receiving and delivering the parcel. When the parcel did not arrive on that date, Wright went to the Kapalama post office and was informed that the parcel would be delivered on 11/06/2014. Upon retrieving the parcel from the locker at the Waena Apartments, Wright met with Toma, who instructed him to take the parcel to Waikiki and call the hotel where Toma was staying. Wright advised that he was stopped and arrested on his way to Waikiki with the parcel.

…

13.    On 11/06/2014, in a written statement, Wright indicated that he received a handful of parcels through the U.S. Postal Service over the past few months, primarily sent to his Liliha Street address; all of which he believed contained marijuana. Wright reiterated in writing that he smoked marijuana, but did not smoke methamphetamine or crack cocaine. In approximately mid-September 2014, Wright met Toma at a club, and the two became acquaintances. Wright further noted that approximately 2 weeks prior to his statement, he and Toma arranged for parcels to be sent to Wright's Liliha Street address. Wright received one parcel from Toma on 11/01/2014, but did not know what type of drug was in the parcel. Wright met [*sic*] later delivered the parcel to Toma at the Hilton Hawaiian Village. Wright was told by Toma that another parcel, containing marijuana, would arrive on 11/05/2014, and Wright went to the post office to inquire about it. Toma then informed Wright that the parcel would arrive on 11/06/2014. Upon retrieving the parcel, Toma was at the mailbox, riding a rented red moped. Toma told Wright to bring the box to his hotel, but did not specify which hotel. Wright was expecting to earn $1,000.00 for receiving and delivering the box to Toma. Wright advised that he did not know what was in the box, but thought that it

was marijuana. Wright further noted that he was arrested while in transit to meet Toma.

13a.     On 11/20/2014, in a proffered statement, Wright advised that he met Toma through his friend, L.B., who resides in Honolulu. Wright further advised that he previously received parcels of marijuana for L.B., for which he received 2 ounces of marijuana as payment. Upon delivering the parcels to L.B., L.B. generally opened the packages in front of Wright. Accordingly, when Wright agreed to pick up parcels for Toma, he assumed that they only contained marijuana. A couple months prior to his arrest, Wright received his first parcel from Toma, which he delivered to Toma at the Hawaiian Hilton Village. Wright indicated that the parcel contained user amounts of cocaine. Wright did not indicate how he knew that cocaine was in the parcel. Wright was paid 2 ounces of marijuana for the delivery. Thereafter, Wright received a parcel for L.B. on 11/01/2014, and delivered it to L.B. at his apartment. On another occasion, Wright retrieved cocaine in the area of University Avenue, and brought it to Toma and L.B.

13b.     Wright told investigators that the circumstances for the second parcel from Toma were different than in the first. For example, Toma promised to pay Wright $1,000.00 for his services, and told Wright not to tell L.B. about the parcel. Further, upon Wright's receipt of the package, Toma arrived on his moped, but did not want to take the parcel, and directed Wright to bring the package to an unspecified hotel in Waikiki. Additionally, Wright agreed to call Toma when he arrived in Waikiki. After his arrest, neither Wright nor L.B. could reach Toma.

Presentence Investigation Report, Dkt. No. 35.

Following his arrest and the initiation of a criminal proceeding against Wright, the Office of the Federal Public Defender ("FPD") was appointed to represent Wright. Although the Government moved for Wright to be detained without bail, Wright was released subject to various conditions. Three days after

Wright's initial appearance in this case, Assistant Federal Public Defender Alexander Silvert appeared as counsel for Wright.

Thereafter, on March 12, 2015, at a hearing before this Court, Wright waived indictment and pled guilty, without a plea agreement, to the only charge in the Government's Information–knowingly and intentionally possessing with intent to distribute some quantity of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers. 3/12/15 Transcript of Hearing at 20:23-27:18, Dkt. No. 26. Among other things, at the plea hearing, the Government acknowledged that Wright thought the package with which he was arrested contained marijuana rather than methamphetamine. Despite his plea, the Court permitted Wright to remain out on bail, subject to the previously imposed conditions.

## II.  Sentencing

Prior to sentencing, the U.S. Probation Office prepared a PSR. Therein, the Probation Officer recommended that, in calculating Wright's base offense level, he be held responsible for 1.3 kilograms (or 1,333 grams) of methamphetamine. Wright objected to this recommendation on the ground that he thought the package with which he was arrested contained marijuana.

At sentencing, the Court overruled Wright's objection based upon its review of precedent from the Ninth Circuit and held him responsible for 1.3 kilograms (or

6

1,333 grams) of methamphetamine in calculating his base offense level. After various reductions to the base offense level that the Court found to be applicable, Wright's total offense level was calculated as 22, which, with a criminal history category of I, resulted in a guideline sentencing range of 41 to 51 months.

The Court then heard argument from counsel as to an appropriate sentence for Wright. Mr. Silvert, still representing Wright, asserted that, although the Court had held Wright responsible for methamphetamine, Wright should be sentenced within the guideline range that would have been produced had he been held responsible for marijuana. In other words, zero to six months imprisonment, with Wright requesting a sentence of probation. Mr. Silvert argued such a sentence was appropriate for many reasons, including the undisputed fact that Wright thought the package with which he was arrested contained marijuana.

After taking into consideration the arguments of counsel, Wright's allocution, and each of the 18 U.S.C. Section 3553(a) sentencing factors, the Court varied below the guideline range, sentencing Wright to 24 months imprisonment. In addition, the Court permitted Wright to self-surrender by March 17, 2016.

## III.  <u>Appeal</u>

Shortly thereafter, Wright filed a notice of appeal and a motion for bail and to stay mittimus pending his appeal. Prior to his self-surrender date, the Court granted Wright's motion. The Court found that unusual circumstances existed

making it inappropriate for Wright to be detained during his appeal. Those unusual circumstances included the Government acknowledging that Wright believed the package with which he was arrested contained marijuana. Wright, therefore, remained on release during his appeal.

On appeal, in his opening arguments before the Ninth Circuit, Wright argued that this Court plainly erred in holding him responsible for methamphetamine because, pursuant to Section 1B1.3(a)(1)(B) of the Sentencing Guidelines ("Section 1B1.3(a)(1)(B)"), he should not have been held responsible for the conduct of others–the packing of the package with methamphetamine–when he only agreed that the package would contain marijuana. Wright acknowledged that he did not make this argument at sentencing, hence his reason for arguing plain error. Wright also stated that drug *quantity* was not at issue in his appeal. Throughout his appeal, Wright remained represented by Mr. Silvert.

On June 29, 2017, the Ninth Circuit affirmed Wright's sentence. The Ninth Circuit concluded that this Court did not plainly err in holding Wright responsible for methamphetamine because, in doing so, Wright was "merely held responsible for his own conduct" in personally possessing the package containing methamphetamine. 6/29/17 Memorandum of the Ninth Circuit Court of Appeals at 2, Dkt. No. 54. The Ninth Circuit further concluded that this Court correctly used methamphetamine to calculate Wright's sentencing guideline range, even though

Wright believed the package contained marijuana, because "a defendant's *knowledge* of drug type and quantity is not a fact that must be admitted or proved beyond a reasonable doubt." *Id.* (emphasis in original).

Wright then petitioned the Ninth Circuit for panel and en banc rehearing. In his opening arguments for rehearing, Wright argued that, in affirming his sentence, the Ninth Circuit had overlooked that the package he personally possessed did not contain 1.3 kilograms of methamphetamine–it only contained 0.84 grams after interdiction and replacement by law enforcement. Wright argued that, as a result, the only way to hold him responsible for the remaining 1299.16 grams of methamphetamine would be to apply Section 1B1.3(a)(1)(B), which he again argued was impossible given that he had not agreed to receive a package containing methamphetamine.

On March 13, 2018, the Ninth Circuit denied Wright's petition for panel and en banc rehearing without further explanation. The Mandate issued shortly thereafter. Wright then headed to the U.S. Supreme Court, filing a petition for a writ of certiorari. Wright's certiorari petition was denied on October 1, 2018.

## IV. <u>Section 2255 Proceeding</u>

The same day as the Supreme Court's denial of certiorari was docketed with this Court, Wright moved under Section 2255 to vacate, set aside, or correct his sentence ("the Section 2255 Motion"). The only ground upon which Wright

moves for relief under Section 2255 is the ineffective assistance of counsel at

sentencing, *i.e.* Mr. Silvert. Essentially, Wright makes the same argument he made

in petitioning for rehearing before the Ninth Circuit–he should only have been held

responsible for 0.84 grams of methamphetamine because that is all the package

with which he was arrested contained–only, in the Section 2255 Motion, he adds

the wrinkle that Mr. Silvert's alleged failure to spot this issue was prejudicial.

At the same time as filing the Section 2255 Motion, Wright also filed a

Waiver of Conflict of Interest as to the Section 2255 Motion ("the Section 2255

Waiver"), Dkt. No. 63. The reason for the Section 2255 Waiver is the fact that the

Section 2255 Motion was filed by Mr. Silvert. That is, although Wright argues that

Mr. Silvert was ineffective at sentencing, Mr. Silvert still represents him in this

proceeding. To the extent it has any meaning or relevance, the Section 2255

Waiver states that Wright waives any right he may have to contest in this case or

any future litigation Mr. Silvert's conflict of interest in continuing to represent

Wright.[1]

---

[1]As submitted, the Section 2255 Waiver is of little value. Although found far more frequently in the context of an attorney representing multiple clients in the same criminal case, a waiver of a counsel conflict must be knowing and intelligent. *See Lockhart v. Terhune*, 250 F.3d 1223, 1232 (9th Cir. 2001). In order to qualify, any purported waiver must sufficiently inform the defendant of the consequences of his choice. *Id.* The Section 2255 Waiver provides no basis for the Court to find that Wright's waiver was knowing and intelligent, as it, *inter alia*, fails to state that Wright was informed of the consequences of his waiver or that he was so-advised by conflict-free counsel. One consequence is that, having now filed a motion under Section 2255, Wright will face more difficulty in the future to have conflict-free counsel file any claims on his behalf that challenge his sentence or conviction. Nonetheless, at least for purposes of this proceeding,

Also at the same time as filing his Section 2255 Motion, Wright filed a

motion for bail during the pendency of the Section 2255 Motion, Dkt. No. 64.  This

Court denied the motion for bail on October 30, 2018, and subsequently set

November 9, 2018 as the date for Wright to self-surrender.  On October 31, 2018,

Wright filed a petition for writ of mandamus before the Ninth Circuit, challenging

the Court's Order denying his motion for bail.  With this Court, he then moved to

stay mittimus and/or for release on bail pending resolution of his petition for writ

of mandamus ("the motion to stay"), Dkt. No. 73.  Thereafter, Wright also filed a

motion for a temporary stay of mittimus pending an application for similar relief he

intended to file with the Ninth Circuit ("the motion for a temporary stay"), Dkt.

No. 75.  The Court granted the motion for a temporary stay to the extent that

mittimus was stayed until the Ninth Circuit ruled on any application for a stay

---

Mr. Silvert's conflict is of no *constitutional* import because Wright is not entitled to counsel in a collateral proceeding such as this one.  *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further."); *Wainwright v. Torna*, 455 U.S. 586, 587-588 (1982) ("Since respondent had no constitutional right to counsel, he could not be deprived of the effective assistance of counsel by his retained counsel's failure to file the application timely."); *Minicone v. Werlinger*, 430 F. App'x 84, 85-86 (3d Cir. June 3, 2011) (concluding that errors by counsel in a collateral proceeding "and, by extension, 'conflicts of interest' of this sort," do not implicate the Sixth Amendment, and explaining that the conflict at issue was counsel having represented the defendant at sentencing and in his first Section 2255 proceeding).  As a result, the Court finds it unnecessary to investigate further whether the Section 2255 Waiver was knowing and intelligent. The Court adds that it is not even clear if the FPD may represent Wright in this Section 2255 proceeding, as there has been no request to authorize representation beyond appeal, and thus, no showing or determination that the interests of justice call for such representation.  *See* 18 U.S.C. § 3006A(a)(2) (defendants seeking Section 2255 relief may be provided representation when "the interests of justice so require"), § 3006A(c) (appointed counsel represents a defendant from initial appearance through appeal).

Wright filed with the Court of Appeals. Wright then filed a request for

clarification on the status of the motion to stay ("the request for clarification"),

Dkt. No. 77. Wright also moved to stay mittimus of sentence in the Ninth Circuit.

On December 18, 2018, the Ninth Circuit granted Wright's motion to stay

mittimus of sentence pending the resolution of his petition for writ of mandamus.

This Court, therefore, finds that the motion to stay, Dkt. No. 73, and the request for

clarification, Dkt. No. 77, are MOOT.

## STANDARD OF REVIEW

Under Section 2255, "[a] prisoner in custody under sentence of a court

established by Act of Congress . . . may move the court which imposed the

sentence to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255(a). The

statute authorizes the sentencing court to grant relief if it concludes "that the

sentence was imposed in violation of the Constitution or laws of the United States,

or that the court was without jurisdiction to impose such sentence, or that the

sentence was in excess of the maximum authorized by law, or is otherwise subject

to collateral attack[.]" *Id.*

## DISCUSSION

As set forth above, Wright raises one claim in the Section 2255 Motion: that

he received ineffective assistance from his current counsel at the time of

sentencing. The Court first sets forth the applicable legal standards for an

ineffective assistance of counsel claim, and then addresses Wright's specific arguments.

## I.      Legal Standards For a Claim of Ineffective Assistance Of Counsel

### A.      General Standard

To prevail on an ineffective assistance of counsel claim, a petitioner must establish two distinct elements.  First, he must show that counsel's representation fell below an objective standard of reasonableness.  *Strickland v. Washington,* 466 U.S. 668, 688 (1984).  Second, he must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.  In other words, a petitioner must show both that counsel's performance was deficient *and* that the deficiency was prejudicial.  *Id*. at 692.

Counsel "is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690.  "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.  In other words, counsel has a duty to make reasonable investigations or to make a

reasonable decision that makes particular investigations unnecessary." *Id*. at 690-691.

Conclusory allegations of ineffective assistance of counsel made with no factual or legal explanation fall well short of stating a cognizable claim for ineffective assistance of counsel. *See Blackledge v. Allison,* 431 U.S. 63, 74 (1977) ("[P]resentation of conclusory allegations unsupported by specifics is subject to summary dismissal.").

### B. <u>Sentencing</u>

*Strickland* applies to claims of ineffective assistance of counsel in noncapital sentencing proceedings, *Daire v. Lattimore*, 812 F.3d 766, 767 (9th Cir. 2016), such as the one challenged in this case. To establish *Strickland* prejudice in the sentencing context, the Supreme Court has suggested that any increase in a defendant's sentence caused by a particular decision of counsel is prejudicial. *See Glover v. United States*, 531 U.S. 198, 204 (2001) (explaining that the amount by which a sentence is increased "cannot serve as a bar to a showing of prejudice" under the Sentencing Guidelines).

### II. <u>Analysis of Wright's Claim</u>

Before beginning with the *Strickland* analysis, the Court makes the following initial observation. In his memorandum in support of the Section 2255 Motion ("memorandum"), Dkt. No. 62, Wright asserts that his counsel was

ineffective in failing to raise a relevant conduct issue as to drug *quantity* as opposed to the issue that was raised at sentencing of drug *type*. Wright acknowledges, however, that the *quantity* issue was raised before the Ninth Circuit, albeit in his motion for panel and en banc rehearing. Wright contends that his raising of the quantity issue before the Ninth Circuit should not stop this Court from addressing whether his counsel provided ineffective assistance because "the only reasonable inference to make is that the Ninth Circuit denied rehearing as a matter of discretion under the fourth plain error prong, rather than because there was no error at all." Dkt. No. 62 at 7. That speculation is meritless.[2]

Nonetheless, because the Government has failed to address whether the Ninth Circuit has rejected Wright's underlying argument with respect to the quantity of drugs he should be held responsible, and, to the extent the Ninth Circuit has considered the argument, it is not clear on what basis the Court of Appeals

---

[2]As Wright himself argued before the Ninth Circuit in his opening appellate brief, "[t]here is no doubt that the third and fourth plain error requirements are met here. The difference between the range resulting from applying the methamphetamine guideline (41-51 months) and the range resulting from applying the marijuana guideline (0-6 months) is vast." The exact same difference in guideline ranges is what Wright argues exists with respect to the quantity issue he raises in the Section 2255 Motion. *See* Dkt. No. 62 at 3. Wright's speculation, therefore, that the Ninth Circuit relied upon the fourth plain error prong, is wrong. *See Rosales-Mireles v. United States*, 138 S.Ct. 1897, 1907, 1911 (2018) (explaining that, ordinarily, an error resulting in a higher guidelines range will satisfy the fourth prong of the plain error analysis).

rejected it,[3] this Court will address the merits of Wright's claim of ineffective assistance of counsel.

### A.    *Strickland's* **Performance Prong**

Wright's claim of ineffective assistance cannot clear this first hurdle. Simply put, Wright makes no meaningful attempt to argue that his counsel's performance fell below or was unreasonable under prevailing professional norms. The only statement Wright makes in this regard in either his memorandum or reply brief is: "Missing an issue and making a mistake of law is deficient performance." Dkt. No. 62 at 3. Wright, though, provides no factual or legal explanation for that statement.

Factually, Wright provides no context for the assertion that counsel missed an issue. Notably, in the context of counsel's performance, "counsel is *strongly presumed* to have…made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690 (emphasis added). The Court sees no reason, and Wright provides none, why counsel's bald assertion in briefing

---

[3]Although Wright nowhere mentions it either here or in his petition for panel and en banc rehearing, a far more plausible (albeit still speculative) reason for why the Ninth Circuit denied the petition for rehearing was because "ordinarily," the Court of Appeals will "not consider for the first time on rehearing issues not presented by the parties in their briefs on appeal." *See Escobar Ruiz v. Immigration & Naturalization Serv.*, 813 F.2d 283, 285-286 (9th Cir. 1987). There must be "exceptional circumstances" to justify considering arguments raised for the first time in a petition for rehearing. *Id.* at 286. Given that Wright ignored this issue in his petition for rehearing, he did not present the Ninth Circuit with any exceptional circumstances to justify considering his new argument.

papers that he missed an issue should overcome the strong presumption that counsel, instead, exercised reasonable professional judgment in deciding to forego contesting the *quantity* of drugs for which Wright was responsible.[4]  There is no evidentiary support, such as through an affidavit of counsel, that counsel missed this issue, and the Court need not simply presume an issue was missed because it was not raised at the appropriate time.  Such a presumption would be the inverse of the presumption *Strickland* requires.

Legally, Wright provides no explanation for the contention that counsel made a mistake of law.  Indeed, Wright does not even identify the mistake of law counsel purportedly made.  Presuming that it is the amount of drugs for which Wright should have been held responsible, at best, this is a mixed question of law and fact.  *See United States v. Laurienti*, 611 F.3d 530, 552 (9th Cir. 2010) (explaining that, while it may be unclear what the standard of review is of a district court's application of the guidelines to the facts of a case, "typically" such application is "viewed as a mixed question of fact and law").  In other words, the

---

[4]Having presided over sentencing, from this Court's perspective, it was reasonable for counsel to take the approach he did.  Namely, counsel focused the Court's attention on the fact that Wright believed the package contained marijuana.  Counsel did so when arguing that Wright's guideline range should be based upon marijuana and, importantly, in arguing that, irrespective of the guideline range, application of the sentencing factors should produce a sentence consistent with Wright's understanding of the package's contents.  Although the former argument was unsuccessful, the latter argument helped produce a downward variance in Wright's sentence. Wright provides no explanation for why it was unreasonable for counsel to press the marijuana issue–a drug for which the guidelines are substantially lower than methamphetamine–rather than the amount of methamphetamine at issue.

quantity issue here requires interpreting a sentencing guideline, making factual findings, and then determining the amount of drugs for which Wright should be held responsible based upon the facts of this case. Unlike the only case to which Wright cites to support his contention that counsel acted deficiently, which is discussed below, it is not simply a question of knowing whether a law says X or Y.

In *Hinton v. Alabama*, 571 U.S. 263 (2014), the Supreme Court was faced with counsel who hired an expert based purely on counsel's belief that Alabama law capped funding for an expert at $1,000 and the expert in question being the only person counsel could find who would work for that amount of money. *Id*. at 267-268. As the Supreme Court explained, though, Alabama law had been amended a year prior to the defendant's arrest such that there was no longer any dollar-specific cap on funding for an expert at the time counsel was searching for one. *Id*. at 267. The Supreme Court concluded that counsel's failure to "make even the cursory investigation of the state statute providing for defense funding for indigent defendants," combined with counsel's "failure to request additional funding in order to replace an expert he knew to be inadequate," constituted deficient performance. *Id*. at 274. Those are simply not even remotely the circumstances at play here, and Wright makes no contention that they are. Unlike in *Hinton*, a cursory investigation of the relevant sentencing guideline here would not have revealed to counsel the purported error of his ways. Wright's conclusory

assertion that counsel made a mistake of law, therefore, is not only unhelpful but wrong.

The Court notes that, although Wright failed to adequately address whether his counsel performed deficiently at sentencing, the Government addressed this issue in its response brief. More specifically, the Government argued that counsel's performance did not fall below prevailing professional norms because, in Hawaii, defense counsel "routinely choose not to challenge drug quantity in cases involving controlled deliveries of trace amounts of methamphetamine." Dkt. No. 70 at 7. In his reply brief, Wright dedicates just one sentence in response to this seemingly important contention, asserting that the Government's argument "elides" what makes this case anything other than routine–the Government's concession that Wright believed the package contained marijuana. Dkt. No. 79 at 11. Contrary to Wright's assertion, however, the Government's argument does not omit any facts. The Government's argument is simple: counsel in Hawaii routinely do not challenge drug quantity in cases involving controlled deliveries of small amounts of methamphetamine. Wright makes no argument to the contrary, nor does Wright present any evidence (or even argument) contesting the cases on which the Government relies. Thus, although it is Wright's burden to show that his counsel's performance fell below prevailing professional norms, the Government has done far more in opposition.

In summary, Wright makes no meaningful, non-conclusory attempt to show that his counsel performed deficiently at sentencing. Wright presents no evidence supporting that counsel performed deficiently and cites no law supporting any such contention. In effect, Wright simply makes an unordained assertion that counsel's performance was deficient. *Strickland*, however, requires far more than that–something which Wright ignores. As a result, the Court finds that Wright's claim of ineffective assistance of counsel at sentencing fails to satisfy the first prong of *Strickland* and can be denied on that basis alone.

## B. *Strickland's* Prejudice Prong

In light of the Court's finding that Wright has failed to satisfy the performance prong of *Strickland*, it is not necessary to address whether counsel's performance at sentencing was prejudicial. *See Strickland*, 466 U.S. at 697. Nonetheless, the Court chooses to do exactly that.

As mentioned earlier, the Supreme Court has suggested that any amount of additional imprisonment time caused by counsel's performance can be prejudicial under *Strickland*. *See Glover*, 531 U.S. at 203. The initial question, here, therefore, is whether counsel's performance at sentencing–as Wright frames it, counsel's failure to argue at sentencing that the relevant conduct guideline did not capture the methamphetamine removed from the package prior to its delivery–resulted in Wright being sentenced to more time than he would have been had

counsel performed as Wright now says he should have. The answer to this

question begins with the pertinent sentencing guideline–Section 1B1.3(a)(1) of the

U.S. Sentencing Guidelines ("Section 1B1.3(a)(1)").

Section 1B1.3(a)(1) provides as follows:

Unless otherwise specified, (i) the base offense level where the
guideline specifies more than one base offense level, (ii) specific
offense characteristics and (iii) cross references in Chapter Two, and
(iv) adjustments in Chapter Three, shall be determined on the basis of
the following:

(1)　　(A)　　all acts and omissions committed, aided, abetted,
counseled, commanded, induced, procured, or willfully
caused by the defendant; and

　　　(B)　　in the case of a jointly undertaken criminal activity (a
criminal plan, scheme, endeavor, or enterprise
undertaken by the defendant in concert with others,
whether or not charged as a conspiracy), all acts and
omissions of others that were–

　　　　　(i)　　within the scope of the jointly undertaken criminal
activity,
　　　　　(ii)　　in furtherance of that criminal activity, and
　　　　　(iii)　　reasonably foreseeable in connection with that
criminal activity;

　　　　that occurred during the commission of the offense of
conviction, in preparation for that offense, or in the course of
attempting to avoid detection or responsibility for that
offense[.]

In addition, the commentary to Section 1B1.3 explains that, "[w]ith respect

to offenses involving contraband (including controlled substances), the defendant

is accountable under subsection (a)(1)(A) for all quantities of contraband with which he was directly involved…." U.S.S.G. § 1B1.3 cmt. n.3(D) (2015).

Wright argues that, when Section 1B1.3(a)(1) is applied to the facts of this case, he can only be held responsible for 0.84 grams of methamphetamine under Section 1B1.3(a)(1)(A) and no amount of methamphetamine under Section 1B1.3(a)(1)(B). He further argues that, if held responsible for only 0.84 grams of methamphetamine, his base offense level would have been 14, which, after taking into account other adjustments and his criminal history category, would have produced a guideline sentencing range of 0 to 6 months, which is less than the 24-month sentence he actually received. Wright argues, therefore, that counsel's failure to argue that he should be held responsible for only 0.84 grams of methamphetamine–i.e., to challenge the *quantity* of methamphetamine for which he was held responsible–resulted in Wright receiving more imprisonment time than he should have.

The Court has no quibble with Wright's calculation of his guideline sentencing range if he were to be held responsible for only 0.84 grams of methamphetamine. The Court disagrees, however, with Wright's assertion that he can only be held responsible for 0.84 grams.

The Court begins with what Wright does not dispute–he is responsible for at least 0.84 grams of methamphetamine under Section 1B1.3(a)(1)(A). This is

because, as Wright concedes, he possessed the package containing that amount of methamphetamine at the time of his arrest.  *See* Dkt. No. 62 at 4.

But Wright is also responsible for the methamphetamine that was removed from the package by law enforcement prior to its delivery, which is approximately 1,300 grams.  Wright spends the vast majority of his argument explaining why he purportedly cannot be found responsible for this amount of methamphetamine under Section 1B1.3(a)(1)(B).  Reliance on Section 1B1.3(a)(1)(B), however, is unnecessary.  Wright is responsible for this methamphetamine under Section 1B1.3(a)(1)(A).

Wright spends little time contending otherwise.  All Wright asserts, without any explanation, is that he did not commit any act with respect to the removed methamphetamine, and, in a conclusory regurgitation of the language of the guideline, he did not aid, abet, counsel, command, induce, procure, or willfully cause the removed methamphetamine to be packed into the package.  Wright, however, is wrong, as he, in fact, committed many acts with respect to the removed methamphetamine.  Most important, he agreed to have packages sent to his address containing a controlled substance, including the package at issue in this case containing all 1.3 kilograms of methamphetamine, and to then deliver the package on arrival to Toma.  In addition, Wright went to the post office to check on the package after it did not arrive on the date he had been told it would.  Wright also

received the package at his address, met with the person for whom he was receiving the package, and drove the package through various city streets in an attempt to take it to its intended destination.  All of these acts are relevant conduct for purposes of Section 1B1.3(a)(1)(A), as they are "acts" "committed…by the defendant" "during the commission of the offense of conviction [and/or] in preparation for that offense…."[5]

For reasons unknown, Wright fails to mention any of these acts.  Instead, he focuses his attention solely upon one–the packing of methamphetamine into the package.  That is certainly an act in preparation of the offense of conviction, but, Wright appears to be under the impression that it is the only one for which he can be held responsible under Section 1B1.3(a)(1)(A).  That is simply not true.  Section 1B1.3(a)(1)(A) concerns *all* acts committed by a defendant in connection with an offense, not just the acts arguably most responsible for the offense.

The Ninth Circuit's decision in *United States v. Johnson*, 357 F.3d 980 (9th Cir. 2004), confirms this.  Notably, in *Johnson*, the Circuit found that the defendant's relevant conduct involved ordering a controlled substance, checking on the package, and receiving it when it was delivered.  *Id*. at 987.  The

---

[5]Further, Wright willfully caused the shipment of the package at issue in this case when he agreed to receive it.  *Cf. United States v. Storey*, 595 F. App'x 822, 824-825 (10th Cir. Dec. 17, 2014) (concluding that the district court did not err in finding the defendant responsible for the entire amount of methamphetamine found in a package under Section 1B1.3(a)(1)(A) because, although he was not sure of the type of drugs in the package, he agreed to and caused the receipt of the package).

defendant's relevant conduct did not involve packing the package with a controlled substance. Nonetheless, the Circuit concluded that the defendant should be held responsible for the entire amount of drugs shipped to him under Section 1B1.3(a)(1)(A). *Id.*

Wright attempts to factually distinguish *Johnson*, but, there is only a single—ultimately unpersuasive—reason to do so. Here, as in *Johnson*, the defendant checked on the package after delivery was not made, and the defendant received the package at his address. The only difference is that, in *Johnson*, the defendant ordered the controlled substance, while, here, Wright agreed to receive a controlled substance. While this is a difference, it does not make Wright's agreement to receive a controlled substance any less of an act committed by him or mean that Wright did not cause the package containing a controlled substance to be sent to him. This difference, in other words, does not minimize *Johnson*'s import.

Wright further attempts to distinguish *Johnson* on the ground that it purportedly stands for the proposition that interdiction of controlled substances should not preclude liability for the "frustrated objective" of an offense. *See* Dkt. No. 79 at 3-4. As with all of Wright's arguments, that argument focuses upon Wright's *knowledge* of the type of drug contained in the package. *See id.* at 4 (arguing that Wright did not agree on the objective of distributing methamphetamine). Wright's continued argument that he did not know the type of

drug in the package, however, continues to be irrelevant. As Wright himself concedes, "the fact that he was mistaken about what was in the parcel doesn't matter" with respect to Section 1B1.3(a)(1)(A). *See* Dkt. No. 62 at 4.

In any event, the logic underpinning *Johnson* is that a defendant should not benefit from the *fortune* of having law enforcement remove the vast majority of drugs prior to a delivery, given the difficult choices law enforcement must make in attempting a controlled delivery. *See Johnson*, 357 F.3d at 987. As the Ninth Circuit explained, "had the agents successfully made a controlled delivery of the original package rather than removing most of the drugs, 83.2 grams would have arrived at Johnson's door." *Id*. There is no substantive difference here. If investigators had not removed all but 0.84 grams of methamphetamine from the package, 1,333.84 grams of methamphetamine would have arrived in Wright's mailbox. He would also have then possessed that amount of methamphetamine and driven it through various city streets. The only reason this did not happen is because law enforcement decided to remove the vast majority of methamphetamine from the package, rather than risk having that substantial amount in the community. Like in *Johnson*, Wright should not benefit from this

fortuitous happenstance when he engaged in relevant conduct with respect to the entirety of the methamphetamine.[6]

The Court need go no further.[7] Simply put, if counsel had argued at sentencing that Wright should only be held responsible for 0.84 grams of methamphetamine under Section 1B1.3(a)(1), the Court would have rejected that argument for the reasons set forth above and still found Wright responsible for the approximately 1.3 kilograms of methamphetamine at issue. As a result, Wright's base offense level, his guideline sentencing range, and, ultimately, his imprisonment time would not have changed. Therefore, counsel's failure to make this argument at sentencing caused Wright no prejudice, and the Court denies his ineffective assistance claim on this ground as well.[8]

## III. Certificate of Appealability

In denying the Section 2255 Motion, the Court must also address whether Wright is entitled to a Certificate of Appealability ("COA"). *See* R. 11(a), Rules

---

[6]The Court adds that, in the context of *Strickland's performance* prong, Wright makes no attempt to argue that a belief *Johnson* foreclosed an argument as to the quantity of drugs for which Wright should be held responsible was unreasonable.

[7]The Court notes that, although not in his memorandum, Wright cites numerous cases in his reply brief for the contention that he should not be held responsible for the removed methamphetamine. *See* Dkt. No. 79 at 7-10. Wright argues that these cases are "on point." However, the cited cases involve the application of Section 1B1.3(a)(1)(B). *See id.* As this Court has already stated, this is not a Section 1B1.3(a)(1)(B) case, and thus, the cited cases carry little weight.

[8]No party has requested an evidentiary hearing in this proceeding, and, to the extent it is necessary, the Court finds that one is not required to resolve the specific claims asserted here. *See* 28 U.S.C. § 2255(b) (providing that a hearing shall be granted "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]")

Governing Section 2255 Proceedings. A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard is met only when the applicant shows that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 483–84 (2000) (internal quotation marks omitted). Based on the above analysis, and in particular, Wright's failure to make any attempt to demonstrate that his counsel performed deficiently at sentencing, the Court finds that reasonable jurists would not find the Court's decision herein debatable. Accordingly, the Court DENIES the issuance of a COA.

## CONCLUSION

For the foregoing reasons, the Court DENIES the Section 2255 Motion, Dkt. No. 61. In addition, the Court DENIES a COA. Wright's motion to stay mittimus and/or for release on bail, Dkt. No. 73, and request for clarification on the status of the motion to stay, Dkt. No. 77, are DENIED AS MOOT.

Finally, in light of this denial of the Section 2255 Motion, Wright's petition for writ of mandamus pending before the Ninth Circuit, and the Ninth Circuit's December 18, 2018 stay of mittimus pending resolution of Wright's mandamus

petition, the parties are directed to advise the Ninth Circuit of the issuance of this

Order within seven (7) days of entry.

The Clerk is directed to enter Judgment in favor of Respondent, the United

States of America, and then close Case No. 18-cv-377 DKW-KJM.

IT IS SO ORDERED.

Dated:  January 8, 2019 at Honolulu, Hawaiʻi.

Derrick K. Watson
United States District Judge

---

*Wright v. United States*; CR. NO. 15-00171 DKW, CV. NO. 18-00377 DKW-KJM; **ORDER (1) DENYING MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE; AND (2) DENYING CERTIFICATE OF APPEALABILITY**